**Ted MAPLES and Virginia Maples, Plaintiffs-Appellants,**

v.

**UNITED SAVINGS AND LOAN ASSO- CIATION, Defendant-Respondent.**

**No. 13502.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 30, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 21, 1985.

Application to Transfer Denied April 2, 1985.

Jerry Mee, Springfield, for plaintiffs-appellants.

Jack L. Miller, Lebanon, Michael J. Patton, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for defendant-respondent.

PREWITT, Chief Judge.

Plaintiffs sought actual and punitive damages, contending that defendant had converted personal property belonging to them. A jury found for defendant and judgment was entered accordingly. Plaintiffs appeal, contending instructional error.

The case came to us on an abbreviated record. The facts agreed to by the parties state:

Respondent foreclosed on Appellants home March 26, 1981. Respondent's Vice President notified Appellants of the foreclosure in the first part of April, 1981, and asked for Appellants keys to the home which Appellants supplied. Removal of Appellants personal property by Appellants was discussed at that time. Appellants denied any mention of a time limit on the moving of their personal property from the home. Respondent's Vice President testified that he recalled discussing a time interval of two weeks for the removal. Appellants retained keys to the house to get into it to remove their property. Appellants denied any contact with Respondent after some of the keys to the house were given to Respondent's agent in the first part of April. Appellants denied a time limit mentioned or agreed upon in personal conferences or letters.

Respondent's Senior Vice President testified that he mailed Appellants a letter on May 15, 1981, the pertinent part of which reads:

We are in the process of trying to sell this house now to protect our security and investment, but we find you still have your personal effects in the house. We feel you have been given sufficient time to have these removed and we now must advise that if these are not removed within 10 days (May 25, 1981) you leave us no other choice but to have our Attorney take whatever steps are necessary to have them removed.

Appellants denied receiving such a letter.

On May 17, 1981, Appellants took most of their personal property to another house, 7 miles or so away which they had rented. The rental home had little space for all of their property and had no enclosed garage. Appellants claimed that they had to leave some of their personal property in the enclosed garage of the house which had been foreclosed. Appellants claimed to have gone to the foreclosed property frequently because of their concern that their property left in the garage could be taken from the garage by burglars. There was no For Sale sign in the yard and no posted advice to Appellants to move their personal property. On or about June 26, 1981,

Respondent employed Mark Hall (who was a party defendant against which Appellants claim was dismissed before submission of the case to the jury) to clean the garage of all the property that is the subject of this suit. Mark Hall testified that he moved property out of the garage at the request of Respondent. Hall testified that he did not see all of the items Appellants claimed removed, but that he did carry away three pick-up loads of property to the dump while keeping some items for his own use.

Appellants went to the foreclosed home on June 28, 1981, and determined that their property had been taken from the garage. Appellants called the Sheriff's office first, and then on the 29th of June, were in contact with Respondent's agent about the removal of their property. Mark Hall returned the items he had retained to Appellants on August 15, 1981.

In their point on appeal appellants contend that the trial court erred in giving the following instruction:

"Your verdict must be for defendant if you believe either:

First, plaintiffs abandoned the personal property referred to in evidence, or

Second, the conduct of plaintiffs implied their permission for defendant to take the property referred to in evidence."

Appellants contend that the portion starting with "Second" is erroneous because it did not require a finding that plaintiffs had knowledge that their property was subject to being removed and discarded by respondent. Appellants' brief cites only *Kegan v. Park Bank*, 320 Mo. 623, 8 S.W.2d 858 (1927), modified on rehearing 320 Mo. 623 at 654, 15 S.W.2d 333 (1928). They refer us to the court's discussion in 8 S.W.2d at 871, placed under headnotes 16 and 17.

We do not believe it aids appellants. The removal there would not have been anticipated and consent to it could not reasonably have been implied without knowledge that it might occur. A bank taking over one's property, earlier improperly taken from the owner's box in the bank, would not be contemplated without the owner's knowledge and consent. Here, appellants would know that if they did not remove their personal property from the house, respondent would likely move it or dispose of it in some manner.

■ Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Kegan,* supra, 8 S.W.2d at 871; *Houston v. Columbia Fed. Sav. & Loan Ass'n,* 569 S.W.2d 211, 214 (Mo.App.1978); *Dewey v. American Stair Glide Corp.,* 557 S.W.2d 643, 649 (Mo.App.1977); *Wirth v. Heavey,* 508 S.W.2d 263, 267 (Mo.App.1974). See also Annot., Duty and liability of one in possession of real property in respect of personal property which he finds thereon belonging to another. 131 A.L.R. 165 (1941).

■ Obviously, if the owner consents, there is no unauthorized taking. That consent can either be express or implied. *Graves v. Stewart,* 642 S.W.2d 649, 650–651 (Mo. banc 1982); *Kegan,* supra, 8 S.W.2d at 871; *Wirth,* supra, 508 S.W.2d at 267; 18 Am.Jur.2d, Conversion, § 72, p. 202; 89 C.J.S. Trover & Conversion, § 5, p. 535.

"Implied" means necessary deduction from the circumstances, general language or conduct of the parties. *Farm Bureau Mut. Ins. Co. v. Dryden,* 492 S.W.2d 392, 394 (Mo.App.1973). "Implied consent" is that manifested by signs, actions or facts, or by inaction or silence which creates an inference that consent has been given. *State v. Stanfield,* 1 S.W.2d 834, 836 (Mo. 1927).

■ If appellants' conduct implied permission for respondent to take their property, it does not matter what appellants' actual knowledge may have been. This is similar to apparent mutual assent required to have a contract. That assent is not determined by the state of mind, but by the conduct of the parties and the language employed by them, judged by a reasonable standard. *Roper v. Clanton,* 258 S.W.2d

283, 289 (Mo.App.1953); *Longmire v. Dia-graph-Bradley Stencil Mach. Corp.*, 176 S.W.2d 635, 646 (Mo.App.1944); 17 Am. Jur., Contracts, § 19, p. 355.

■ If respondent believed and it reasonably appeared to respondent that appellants were assenting to the taking of their property, then respondent was not guilty of conversion. Whether that occurred or if there was evidence to support the instruction is not before us.

■ It seems obvious that appellants would know that respondent might dispose of the items. Such knowledge could bear on whether their consent was implied, but it is not what knowledge appellants had, but what was indicated by their conduct that controls. We hold that under these facts the instruction was not erroneous in the particular claimed.

The judgment is affirmed.

HOGAN, P.J., and MAUS, J., concur.

CROW, J., recused.